133 P.3d 505 (2006)
STATE of Washington, Respondent,
v.
R.L.D.,[1] Appellant.
No. 32411-3-II.
Court of Appeals of Washington, Division 2.
May 2, 2006.
*506 Lisa Elizabeth Tabbut, Attorney at Law, Longview, WA, for Appellant.
Amie L. Hunt, Hall of Justice, Cowlitz Prosecuting Attorneys Office, Kelso, WA, for Respondent.
HOUGHTON, J.
¶1 R.L.D. appeals his juvenile adjudication of second degree theft, arguing that insufficient facts support his guilty plea. He also appeals his manifest injustice disposition on his guilty plea to conspiracy to commit second degree burglary and the revocation of his driver's license based on the second degree theft adjudication.
¶2 We agree that insufficient evidence supported taking the guilty plea to second degree theft and that it must be reversed and dismissed, the adjudication vacated, and the matter remanded for resentencing. Because the court revoked R.L.D.'s driver's license based on the adjudication of second degree theft, a felony, we reverse and remand with instructions to reinstate his license. *507 Finally, we affirm the manifest injustice disposition on the conspiracy to commit second degree burglary adjudication.

FACTS
¶3 On July 24, 2004, a Longview police officer responded to a vehicle prowl report at Mark Morris High School. Behind the school, the officer found R.L.D. and another minor huddled together against a brick wall.
¶4 The officer determined that several individuals, including R.L.D., planned to go to Azteca restaurant to steal some money. As R.L.D. and the others walked toward the restaurant, they passed through the school parking lot where they discovered an unlocked Nissan automobile. R.L.D. and a friend entered the car, removed wires from below the steering column, and began to "hot wire" the car when a bystander interrupted them. Clerk's Papers (CP) at 23. They fled without starting the car. The officer took them into custody.
¶5 On July 28, 2004, the State charged then 17-year-old R.L.D. with (1) conspiracy to commit second degree burglary and (2) second degree theft. The information for the second degree theft charge stated:
The defendant, in the County of Cowlitz, State of Washington, on or about July 24, 2004, did wrongfully obtain and/or exerted unauthorized control over a motor vehicle of less than $1,500 in value, a 1989 Nissan car, Washington license # 859NGM, with intent to deprive Troy Bowen of such property; contrary to RCW 9A.56.020(1)(a) and RCW 9A.56.040(1)(d) and against the peace and dignity of the State of Washington.
And furthermore, circumstances exist to support a sentence outside of the standard range under RCW 13.40.160 and RCW 13.40.0357.
CP at 2. On July 30, 2004, a deputy probation officer gave notice that the State would seek manifest injustice findings at any disposition hearing.
¶6 The court requested that R.L.D. undergo a diagnostic evaluation.[2] The court sought information about disposition recommendations and his level of function.
¶7 The September 22, 2004 report described R.L.D.'s drug use history and maternal abandonment. The report also identified his possible learning disability and lack of education past the ninth grade.
¶8 As to R.L.D.'s chemical dependency, the evaluator recommended that he participate in an inpatient treatment program at a secure facility as "he is not amendable to treatment in an outpatient setting." CP at 27. Also, the evaluator observed that R.L.D. "is in need of a high degree of structure and consistency to provide external controls to assist him in modifying his behavior. He will need to participate in counseling that includes direct instruction in anger management, social skills, coping techniques, and stress management." CP at 28.
¶9 The evaluator noted:
[F]or a youth to be admitted into [the Juvenile Rehabilitation Administration] needing inpatient treatment with a diagnosis of methamphetamine dependence, they would need to have a sentence of at least a *508 minimum of 39 weeks and a maximum of 52 weeks, which would allow the youth to complete drug and alcohol treatment.
CP at 29. As a result, the evaluator recommended that R.L.D. be given a 52- to 65-week manifest injustice disposition.
¶10 On September 23, 2004, after negotiating with the prosecutor, R.L.D. appeared before the juvenile court to plead guilty[3] to second degree theft and conspiracy to commit second degree burglary.[4] Before taking the pleas, the court noted:
Now, the Prosecutor is recommending that you receive a local-sanction sentence, which means they're recommending that you get up to thirty days for each count; twelve months of probation; and a hundred and fifty hours of community service. But, I've already told you that because of the diagnostic that was ordered, the court, on its own motion, is considering a Manifest Injustice, which means the court may very well sentence you to a juvenile institution [for] over a year, because I think the recommendation was fifty-two to sixty-five weeks. So, you need to know that before you enter a plea. Are you aware of that?
Report of Proceedings (RP) at 4. R.L.D. then responded by pleading guilty to the two counts. The trial court declined to follow the State's deferred disposition recommendation, found factors supporting a manifest injustice beyond a reasonable doubt,[5] and imposed a 52- to 65-week confinement disposition.
¶11 The court further found that R.L.D. committed felony of theft second degree while using a motor vehicle and directed the Department of Licensing to revoke his driver's license under former RCW 46.20.285 (2004).[6] He appeals.[7]

ANALYSIS

Factual Basis
¶12 R.L.D. first contends that an insufficient factual basis supports his guilty plea to second degree theft, rendering it invalid. He argues that where the facts support only an attempted second degree theft charge, the remedy is to vacate the adjudication.
¶13 Due process requires that a guilty plea be voluntary, knowing, and intelligent. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. McDermond, 112 Wash.App. 239, 243, 47 P.3d 600 (2002). A guilty plea cannot be knowing and intelligent when the defendant has been misinformed about the nature of the charge. Bousley v. United States, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). A defendant must not only know the elements of the offense, but also must understand that the alleged criminal conduct satisfies those elements. In re Pers. Restraint *509 of Hews, 99 Wash.2d 80, 88, 660 P.2d 263 (1983), aff'd, 108 Wash.2d 579, 741 P.2d 983 (1987); see also McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (guilty plea "cannot be truly voluntary unless the defendant possess an understanding of the law in relation to the facts"). Without an accurate understanding of the relation of the facts to the law, a defendant is unable to evaluate the strength of the State's case and thus make a knowing and intelligent guilty plea. State v. Chervenell, 99 Wash.2d 309, 317-18, 662 P.2d 836 (1983).
¶14 A person commits second degree theft by taking a motor vehicle valued less than $1,500. RCW 9A.56.040(1)(d). RCW 9A.56.020(1)(a) defines "theft" as wrongfully obtaining or exerting unauthorized control over the property or services of another with the intent to deprive him or her of such property or services.
¶ 15 Here, R.L.D. and a friend entered an unlocked car, removed wires from below the steering column, and tried to hot wire when interrupted by a bystander. All versions of the event before the court when taking the plea indicate that R.L.D. and his friend fled before they could actually start the car.
¶16 Under these facts, R.L.D. did not have keys to the car, had not started the engine, and had not driven it. Although he attempted to hot wire the car, his efforts proved unsuccessful. The plea agreement facts (and other facts before the court)[8] insufficiently demonstrate the requisite dominion and control to support a theft conviction. Cf. State v. Potts, 1 Wash.App. 614, 617, 464 P.2d 742 (1969) (sole occupant and driver of a vehicle has dominion and control over it and its contents).
¶17 Because R.L.D.'s plea to second degree theft does not meet constitutional muster, his adjudication of that crime must be vacated. Nevertheless, his actions fit the lesser crime of attempted second degree theft[9] because attempting to "hot wire" the car constitutes a substantial step toward stealing it. Relying on In re Pers. Restraint of Keene, 95 Wash.2d 203, 622 P.2d 360 (1980), R.L.D. argues that the remedy is to vacate and dismiss. We agree.
¶18 In Keene, our Supreme Court held that where insufficient evidence supported a guilty plea of forgery, but sufficient evidence supported third degree theft, the remedy was to vacate and dismiss.

Driver's License Revocation
¶ 19 R.L.D. also contends that the trial court erred in directing the Department of Licensing to revoke his driver's license. Based on our reversal, we agree. The facts support only attempted second degree theft, a gross misdemeanor, RCW 9A.28.020(3)(d), and RCW 46.20.285 applies to felony convictions. Thus, we remand with instructions that the trial court direct the Department of Licensing to reinstate R.L.D.'s driver's license.

Manifest Injustice
¶ 20 Relying on State v. Goodman, 150 Wash.2d 774, 785-86, 83 P.3d 410 (2004), R.L.D. argues that the trial court erred in imposing a manifest injustice sentence.[10] He asserts that the charging document failed to apprise him of all the essential elements of the crime, that is, any aggravating factors used to enhance the crime. We disagree.
¶21 On July 30, 2004, two days after the prosecutor filed the information, a deputy probation officer, Cindi Buchanan, filed a notice in juvenile court recommending a *510 manifest injustice disposition. On August 8, the court ordered a diagnostic evaluation of R.L.D., which was provided to both parties and later became the basis of the manifest injustice disposition. Before sentencing, the court also informed R.L.D. that he should not rely on the prosecutor's recommendation because "in all likelihood, the court would declare a Manifest Injustice." RP at 2. It then went on to explain that "because of the diagnostic that was ordered, the court, on its own motion, is considering a Manifest Injustice." RP at 4. The court even inquired whether R.L.D. had the ability and time to fully understand the implications of his guilty plea. R.L.D.'s notice argument fails.
¶ 22 We further hold that the probation officer's notice was not defective for failing to include the basis of the manifest injustice. In Goodman, the court held that the identity of a controlled substance that increases the sentence beyond the statutory maximum must be alleged in the information because it is an element of the offense. 150 Wash.2d at 785-86, 83 P.3d 410. Here, the court's basis for imposing a manifest injustice sentence, the information in the diagnostic, is not an element of the offense. The court ordered the diagnostic to help R.L.D.'s rehabilitation, which is the purpose of the Juvenile Justice Act of 1977, chapter 13.40 RCW, and distinguishes juvenile proceedings from adult criminal prosecutions. State v. Schaaf, 109 Wash.2d 1, 15-16, 743 P.2d 240 (1987). As such, Goodman has no application in a juvenile court proceeding. R.L.D.'s argument fails.
¶23 In sum, we affirm the manifest injustice disposition on the conspiracy to commit second degree burglary adjudication. We reverse and dismiss the adjudication of guilt of second degree theft and remand for resentencing without that adjudication. Finally, we reverse the suspension of R.L.D.'s driver's license and remand with instructions that the trial court direct the Department of Licensing to reinstate the license.
We concur: BRIDGEWATER, J., and VAN DEREN, A.C.J.
NOTES
[1] The nature of this case requires some confidentiality. Therefore, under RAP 3.4, except for government agencies, the names of the parties, and other juveniles involved, will not be used in the case caption and the opinion body.
[2] The diagnostic evaluation referred to the "Official Version of the Offense" and provided:

In official reports of the Longview Police Department, on July 24, 2004, an officer was dispatched to Mark Morris High School [on] the report of a vehicle prowl. Upon arrival, the officer went behind the school to further inspect the situation and found [R.L.D.] and [H.N.] huddled together against a brick wall after another juvenile male ran away climbing over a fence. The officer approached [them] and placed them into custody.
[H.N.] told the officer that she, [and others]... walked through the parking lot at Mark Morris High School and found a 1965 Chevy pick up and [Z.F.] removed a stereo from it. They then walked over to a Nissan Sentra to see if it was locked and it was not. At that time [R.L.D.] and [N.P.] entered the vehicle and attempted to hot wire the car by pulling wires from the ignition.... Before they could get the car started a female subject confronted them and they all took off walking to the rear of the school where the officer located [them].... Later [R.L.D.] admitted to the officer that he and [N.P.] were going to steal the Nissan.
CP at 22-23.
The evaluation also recited R.L.D.'s version of events in which he found the car with the ignition wires already cut.
[3] R.L.D. also pleaded guilty to other charges not related to this appeal.
[4] R.L.D. stated the facts pertaining to both charges in his own words:

On or about July 24th, 2004, in Cowlitz County myself and other individuals entered into a vehicle valued less than $1,500.00 with the intent to take the vehicle and keep it from the rightful owner.
Also on July 24th, 2004 I agreed with other individuals to enter the Azteca Restaurant in Cowlitz County with the intent to take property belonging to the restaurant owner. One of the other individuals had taken keys to the door of the restaurant for entry into the restaurant.
CP at 11.
[5] The juvenile court found the following aggravating factors:

The respondent has a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement;
....
Other: Respondent has not attended school for 3 yearshe needs schooling, Respondent has a drug problem which needs treatment in a secure setting, Respondent is not amendable to local services provided by probation.
CP at 13.
[6] Former RCW 46.20.285 provided:

The department shall forthwith revoke the license of any driver for the period of one calendar year unless otherwise provided in this section, upon receiving a record of the driver's conviction of any of the following offenses, when the conviction has become final:
....
(4) Any felony in the commission of which a motor vehicle is used.
[7] Our commissioner referred this matter to a panel of judges under RAP 17.2(b).
[8] In making this determination, the court may consider any reliable source of information, as long as the information is part of the record at the time of the plea. State v. Saas, 118 Wash.2d 37, 43, 820 P.2d 505 (1991).
[9] "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1).
[10] R.L.D. also cites Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), but concedes that these cases do not directly support his argument. Blakely and Apprendi do not apply to juvenile proceedings. State v. Meade, 129 Wash. App. 918, 925, 120 P.3d 975 (2005).